<hr />

### Meyer vs. Huneke.

Where a promissory note is given for the payment of a sum of money stipulated in a written agreement between the parties to be paid by the one to the other, it is of no value beyond the original contract; and its surrender is of no moment, in changing the rights and liabilities of the parties; and those liabilities will not be affected thereby.

If such note has been surrendered, the payee may recover upon the original agreement; and that right will not be taken away by an unauthorized alteration of the note by him.

The alteration of a note, by the payee, after its execution, may or may not be a criminal act, but it will have no effect on the original contract.

APPEAL by the plaintiff from a judgment entered on the verdict of a jury; and from an order denying a motion for a new trial, made on the judge's minutes.

The action was brought to recover the last of three payments upon a contract under seal, whereby, among other things, the plaintiff covenanted to assign to the defendant a certain lease, and use his influence for its renewal to the defendant, and the defendant covenanted to pay therefor $2,500, in three payments; $500 on the execution of the agreement; $1,000 May 1, 1866, and the third, of $1,000, May 1, 1867, after the defendant should have secured a renewal of said lease. On May 1, 1866, at the time of the second payment, the defendant gave the plaintiff his promissory note, payable May 1, 1867, for the third payment of $1,000, and the plaintiff gave the defendant his receipt, viz: "Rec'd from Mr. George Huneke a note of $1,000, payable May 1st, 1867, as per agreement of March 13th, 1866, between me and Mr. G. Huneke, this said note to be null and void in case I fail to procure another lease, as per agreement." This note was not paid, and the plaintiff produced it on the trial and offered it to be cancelled. The defendant admits, in his answer, that he procured a renewal of the lease. This note was altered by the plaintiff by the addition of the words "with interest." The cause of action set forth in the complaint was upon the original agreement, a copy of which was annexed to, and formed part of the complaint. The note is referred to in the complaint only to offer to cancel it, as follows: "Which said note will be produced on the trial of this action to be delivered up to be cancelled." All the evidence was to the cause of action in the contract only. The note was not introduced in evidence on either side. The judge in his charge says: "If the plaintiff cannot recover in the case upon the note he cannot recover at all." Also that if the alteration in the note was made fraudulently, without the knowledge or consent of the defendant, no recovery could be had.

The jury found a verdict for the defendant.

*Warren G. Brown,* for the appellant.

I. The action is upon the contract only, a copy of which is made a part of the complaint, and all the averments therein make that the only cause of action. All the evidence was received, without objection, upon the contract, and the note was not given in evidence nor sought to be introduced by either side; nor was the note given in pursuance of the contract, which does not call for a note.

II. The cause of action being upon the contract, the right of the plaintiff to recover the $1,000 claimed was clearly proved. In the language of the judge's charge, "There is no question about the fact that upon the contract itself, if the note had not been given, the plaintiff would be entitled to recover this $1,000." Upon this state of the case the only question which could arise was whether the covenant to pay was merged in the note, that is, whether the note was received in payment. This question was not submitted to the jury at all, but other questions which the plaintiff claims do not arise. But the plaintiff claims there was no proof in the case to warrant the jury in finding that the note was received in payment. 1. The note was not introduced in evidence. 2. If it had been introduced in evidence it ·clearly was not payment, because to make a debtor's own note payment of his own debt requires the strictest proof. There are cases which do not appear to have been overruled, which hold that an express agreement that a debtor's own note· shall be received in payment of his debt will not bind the creditor, or prevent his maintaining an action on the original consideration. A debtor's own promise cannot pay his own debt, nor can it operate as an accord and satisfaction. (*Cole* v. *Sackett,* 1 *Hill* 516. 5 *id.* 448, 449. *Frisbie* v. *Larned,* 21 *Wend.* 450–452. *Muldon* v. *Whitlock,* 1 *Cowen,* 290–300. *Hawley* v. *Foote,* 19 *Wend.* 516, 517. *Olcott* v. *Rathbone,* 5 *id.* 490.) 3. The only evidence of any

agreement upon which the note was received is found in the receipt which was given at the time. This does not even purport to be received in payment as such receipts usually read. 4. The note could not have been received in payment, because there was then nothing to pay. By the terms of the agreement, $1,000 was to be paid "after the renewal of said lease to said Huneke." The lease did not expire until a year after that, and of course could not be, and was not renewed until the year after. 5. That a debtor's own note, given under such circumstances, was not and could not be held to be payment is very clear, under the authorities. It only postpones the time of the payment of the debt until default in payment of the note. (*Blakely* v. *Jacobson*, 9 *Bosw.* 140. *East River Bank* v. *Butterworth*, 45 *Barb.* 476. *Tanner* v. *Bank of Fox Lake*, 23 *How. Pr.* 399. *Bates* v. *Rosenkans*, *Id.* 98, and cases cited; affirmed 37 *N. Y.* 409. *Kelly* v. *Second National Bank of Erie*, 52 *Barb.* 328. *Bradford* v. *Fox*, 38 *N. Y.* 289.) 6. Nor could it be held to be a payment even if it had been the note of a third person. (*Turner* v. *Bank of Fox Lake*, 3 *Keyes*, 425. *Smith* v. *Miller*, 6 *Abb. Pr. N. S.* 234. *Smith* v. *Applegate*, 1 *Daly*, 91. *Crane* v. *McDonald*, 45 *Barb.* 354. *Higbie* v. *N. Y. & Harlem R. R. Co.*, 3 *Bosw.* 497, and cases cited. *Johnson* v. *Bank of North America*, 5 *Rob.* 554. *Gibson* v. *Toby*, 53 *Barb.* 191. *Darnall* v. *Morehouse*, 36 *How. Pr.* 511.) In the last cases the General Term reversed the referee on the question of fact. 7. The original consideration is a covenant in an instrument under seal. The debtor's own note cannot, for a still stronger reason, in such a case, be an accord and satisfaction or payment, or operate as an extinguishment of a security of a higher nature than itself. (11 *Mees. & Welsb.* 778.) 8. It is sufficient to surrender the note on the trial. In *Nichol* v. *Michael*, (23 *N. Y.* 264,) the court say, at page 273: "The negotiability of the notes

in this case is of no importance, so long as they have not been negotiated; nor do I think it would affect the rule if they had been at some period out of the hands of the plaintiffs, provided the possession and exclusive interest was in them at the time of the trial." See also *Nellis* v. *Bradley*, (1 *Sandf.* 560,) in which the court, at General Term, permitted the plaintiffs to surrender the acceptance upon the argument there. (8 *Cowen*, 77. 15 *John.* 247. 10 *id.* 104.)

III. The exception to the proof of the alteration, was well taken, as was also that to the refusal of the judge to charge that the suit not being on the note, the alteration of the note was of no account, and the plaintiff was entitled to recover. The plaintiff had a right to bring and maintain his action upon the original consideration, that is, the covenant to pay $1,000. 1. In nearly all of the cases which have been cited on the subject of payment by note, the suit has been upon the original consideration, and the defence has been that of payment by note, which has been disallowed. 2. If the note was not received in payment, and the plaintiff had therefore a right to bring and maintain his action on the original consideration, that is, the covenant to pay in the agreement, it follows that the note, for the purposes of this suit, was an immaterial paper, and needed only to be delivered up to the court to be cancelled; and being an immaterial paper, the alteration of it cannot itself be material. And the materiality is the controlling question in every case of alteration. In all the cases an alteration is only material when it is material in its legal effect. In this case the alteration has no material effect. (*Sanderson* v. *Symonds*, 1 *B. & B.* 421.) This was a policy of insurance, in which the parties believed the alteration material, but the court did not. (*Aldons* v. *Cornwall*, 37 *L. J.* [*Q. B.*] 20, *to the same effect*.) The true rule is laid down by the General Term, in *Chappell* v. *Spencer*, (23 *Barb.* 584,) in which the court, after an

examination of the cases, say: "The rule is universally applied to all material alterations of deeds, bonds or bills of exchange, or other written instruments made by the holder without the consent of the party to be bound or affected thereby, when the same are presented or sought to be used as evidence for the enforcement of an unexecuted obligation or contract. (*Herrick* v. *Malin*, 22 *Wend*. 393. *Adams* v. *Frye*, 3 *Metc*. 103.) In the present case, the note was not sought to be used as evidence, or made the foundation of any claim. The reported cases of alteration of notes appear to be those in which the action was brought upon the note, and in which the note was introduced in evidence to prove the original indebtedness. In *Atkinson* v. *Hawdon*, (2 *Ad. & El*. 628,) the head note is: "If drawer sues acceptor on the bill, and fails in consequence of having altered the bill in a material part, he may still recover on counts on the original consideration." It is otherwise where the action is against the drawer, because in that case the alteration has deprived the drawer of his remedy over on the bill. The same case is reported in 4 *Neville & Manning*, 409. The reporter's note to the case is: "A bill of exchange drawn by the creditor on his debtor creates no merger. It merely suspends the right of action during the period for which the bill is drawn. Though the wrongful act of the drawer in vitiating the bill and destroying the remedy on the bill, could not place him in the same situation as if no bill had been drawn, and by removing that out of the way, which suspended the original right of action for goods sold, would therefore necessarily terminate at the expiration of the period for which the bill was drawn." *Sutton* v. *Toomer*, (7 *Barn. & Cres*. 416.) This case is one where a customer deposited a sum of money with a banker, and received a note which was subsequently altered. The court permitted a recovery on the original consideration, and Bayley, J., says: "It was proved that interest was

paid; that showed there was a loan of money. The subsequent alteration in the note avoided the security, but the debt was created by the loan. In like manner, taking a usurious security for a pre-existing debt does not avoid the debt, but the security is void." In *Frisbie* v. *Larned*, (21 *Wend.* 152,) the court say: "The result of direct adjudication, however, is to treat the note of the debtor as no farther affecting the original debt than to fix the term of payment, and whether given simultaneously with the original contract or afterwards, whether agreed to be taken as a satisfaction or not, it may be disregarded, and on cancellation the original consideration be resorted to if the note be not paid according to its terms." The case of *Master* v. *Miller*, (4 *T. R.* 320,) is the leading case holding altered instruments void. That was a case on a draft, endorsee against acceptor, yet in that case Lord Kenyon says: "The question is not whether or not another action may not be framed to give the plaintiffs some remedy, but whether this action can be sustained by these parties on this instrument." This question is discussed in *Clute* v. *Small*, (17 *Wend.* 238.) In that case the declaration was on the note and the common counts. The note was put in evidence. The court say that a recovery may be had on the note if the alteration was made by consent or under a mistaken belief that he had the right to make the alteration, but a willful and fraudulent material alteration avoids the note, and add: "It would be quite revolting to allow the plaintiff willfully and fraudulently to destroy the note and remit himself, and then use it as evidence of the original consideration. It will be seen that the objection here is to the use of the note in such a case as evidence. In all the cases where a defence has been maintained, the altered instrument has been the foundation of the claim, or the evidence to support it. (*See also* *Sutton* v. *Toomer*, 7 *Barn. & Cres.* 416. *Nichols* v. *Johnson*, 10 *Conn.* 197.) 3. It is not pretended that the

defendant has been injured, in any way.   A forfeiture
of the plaintiff's claim is a quasi criminal punishment
for the alteration of an immaterial instrument, not the
foundation of his claim, nor sought to be introduced in
evidence, and giving the defendant the fine imposed as
a gratuity.   4. There is no question of the identity of
the note.   Both parties agree that the words "with in-
terest" were not in the note when it was executed.

IV.  The court was asked to charge the jury that they
could consider the previous conversations and arrange-
ments between the parties on the question of the intent
with which the alteration was made.   The court refused,
and the plaintiff excepted.   Under the rule laid down
in *Clute* v. *Small*, (17 *Wend.* 238,) it is sufficient to ex-
cuse the alteration that the plaintiff believed he had a
right to make it, whether he in fact had the right to
make it or not.   The first arrangement was that the last
$1,000 was to be paid May 1, 1866.   The defendant
wanted to wait until the 1st of May following, so as to
see if he got a renewal.   The plaintiff naturally sup-
posed he was to have interest on his $1,000 if he waited.
(*Van Brunt* v. *Eoff*, 35 *Barb.* 501.)

V.  The court erred in ruling that the burden of proof
was upon the plaintiff, to satisfy the jury that the alter-
ation was made in good faith.   That is the rule when a
writing with interlineations or alterations is offered in evi-
dence, and the court and not the jury are to say whether
they are satisfactorily accounted for.   (*Tillou* v. *Clinton
Ins. Co.*, 7 *Barb.* 564.)   But where a debt is to be confis-
cated for fraud, the burden of proof is upon the party who
asserts it.   The law presumes innocence, and not guilt.

VI.  The plaintiff's exception to that part of the
charge which says that if the plaintiff cannot recover
upon the note he cannot recover at all, is well taken.
This is equivalent to saying that the plaintiff cannot re-
cover at all, because the action is not upon the note, nor
was it introduced in evidence.

*Sidney S. Harris,* for the respondent.

I. The justice was correct in refusing to charge that the alteration was of no account, and that the plaintiff was entitled to recover. The fraudulent alteration, by adding the words, with interest, avoided the note, and no action could be maintained either on the note or for the consideration of the note. The rule in this State is, that a person interested in an instrument cannot make a fraudulent alteration and then evade the effect of his fraud by resorting to the original consideration. (*Clute* v. *Small,* 17 *Wend.* 238. *Waring* v. *Smyth,* 2 *Barb. Ch.* 119, *and note.*) And the rule is the same in England, (*Alderson* v. *Langdale,* 3 *Barn. & Adol.* 660 ;) and so held in South Carolina, (*Mills* v. *Starr,* 2 *Bailey,* 359 ;) and in Virginia, (*Newell* v. *Mayberry,* 3 *Leigh,* 250 ;) and most positively and distinctly in *White* v. *Haas,* (32 *Ala.* 43.) Any other doctrine would be monstrous, as an encouragement to parties to fraudulently alter instruments and then evade the effect of the fraudulent act. The policy of the law in discountenancing the fraudulent alteration of important instruments is the foundation of the rule. (2 *Pars. on Bills,* 581.) The inability of the plaintiff to recover through a fraudulent instrument, or by the surrender of the same, is a sufficient reason for the ruling of the justice. (*White* v. *Haas,* 32 *Ala.* 430 ) The law will not compel the defendant to accept the surrender of an instrument fraudulently altered, and the plaintiff cannot recover without such surrender, and especially should the rule be applied in such a case as this, where the note and exhibit 3, which is a part of it, constituted the final and executed contract between the parties. It appears that the promise in the agreement to pay the plaintiff $1,000 a year afterward, upon the renewal of the lease, was entirely contingent, first, unless the plaintiff, at the expiration of the year, had obtained by his influence a renewal of the lease ; second, unless the defendant should at that time desire such

Meyer *v.* Huneke.

renewal. If the defendant had concluded not to take a renewal of the lease he would not have been liable, as he makes no promise, at all events, to accept a renewal; but simply stipulates for a right to a renewal, for which, if obtained by the plaintiff's influence, he would pay the plaintiff $1,000. There was, therefore, at the time the note was given, no existing claim or demand by the plaintiff against the defendant, nor was the defendant indebted to the plaintiff therefor, as nothing had then been done by the plaintiff relative to a renewal of the lease, which did not expire until a year afterward, and it was not even then known that the plaintiff could obtain such renewal, much less that the defendant would then desire to take it. This contingent stipulation in the agreement about a renewal was subsequently changed, and a new agreement made May 1, 1866, when the defendant was put in possession, and the note given as a condition of the defendant's having possession; and the note, with the new agreement, was an absolute promise in form to pay the $1,000, made negotiable and capable of being passed off, and was actually transferred before this action. Therefore, at the time of the commencement of the action, this new or substituted agreement constituted the then existing agreement between the parties relative to the payment of the $1,000 for the renewal of the lease. The testimony of the plaintiff shows that the new agreement was for the very purpose of making the liability of the defendant certain and absolute in form, and was in place of the contingent promise in the old agreement, and that such new agreement was exacted as a condition of the defendant's being put into possession of the property, and was the final and executed agreement of the parties. (*Dearborn v. Cross,* 7 *Cowen,* 48. *Renard v. Simpson,* 2 *Kern.* 561. *Babcock v. Hawkins,* 23 *Verm.* 561. *Add. on Cont.* 1,099. *Greenl. Ev.,* § 30. 2 *Pars. on Bills and Notes, pp.* 572, 581, 1*st ed.*) These facts are alleged in the answer,

and established on the trial by the defendant and the witness Voege, and the facts submitted to the jury by the justice. When, therefore, the plaintiff fraudulently altered the note, it was a fraudulent alteration of a material part of the agreement then existing between the parties.

II. There is no evidence that the plaintiff procured a renewal of the lease, or was entitled to the $1,000. It appears that when the plaintiff called upon the agent of the landlord, and inquired whether the defendant could have a renewal of the lease, he was told that a renewal had already been arranged, and a lease given; and it nowhere appears that the renewal was obtained by the influence, directly or indirectly, of the plaintiff.

III. The court was correct in refusing to charge that the previous conversations and arrangements could be considered in determining the question of intent. The only question was, whether the alteration was made with the knowledge and consent of the defendant. The jury have found, in the general verdict, for the defendant, upon the question whether the note was to bear interest.

IV. The exceptions are untenable. The defendant set up, in his answer, false representations in the making of the old agreement, and any evidence tending to prove that defence was admissible. The court ruled in favor of the plaintiff upon this part of the case, and withheld the question of false representations from the jury. The plaintiff is not, therefore, injured by any of the rulings.

*By the Court,* INGRAHAM, P. J. When this cause was before the General Term after the first trial, the court decided that the note might be surrendered and the plaintiff might recover on the original agreement. The effect of that decision was to hold that the alteration of the note, although it made the note void, did not

Meyer *v.* Huneke.

operate to destroy the original contract, which could be enforced without using the note as evidence of the same. Undoubtedly if the note had been the note of a third person, or had other names on it than the original parties to the contract, it could not be surrendered, under such circumstances, because such surrender would not place them in the same condition they were in before the note was given. In this case, however, no such result follows. The note never was of any value beyond the original contract. Its surrender at any time was of no moment, in changing the rights and liabilities of the parties. These liabilities were unaffected thereby. The destruction of the note, in any way, whether voluntary or involuntary, would be perfect. The alteration of the note may or may not have been a criminal act, but that would have no effect on the original contract. A case similar in its relations is where a note is given for a pre-existing debt and the holder takes usurious interest for the extension of the time of payment. Such note, though void for the usury, does not destroy the original cause of action. (*Farmers and Mechanics' Bank of Genesee v. Joslyn,* 37 *N. Y.* 353. *Winsted Bank* v. *Webb,* 39 *id.* 325.)

There can be no doubt of the right of the plaintiff to recover on the original security, if the note had been surrendered without any alteration. That right is not taken away by the supposed alteration of the note.

Judgment reversed.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Davis,* Justices.]